UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID ALBERTS,<br>Plaintiff,<br>v.<br>BRIDGE HOUSING CORPORATION, et al.,<br>Defendants. | Case No.: 25-cv-2908-RSH-SBC<br>**ORDER GRANTING KTS DEFENDANTS' MOTION TO DISMISS AND DENYING BRIDGE HOUSING'S MOTION TO DISMISS**<br>[ECF Nos. 33, 34, 42] |

Pending before the Court are motions to dismiss Plaintiff's Second Amended Complaint, filed by defendants Kimball, Tirey & St. John LLP, Natalie D. Contreras, Raymund M. Quicho (collectively the "KTS Defendants"), and defendant Bridge Housing Corporation ("Bridge Housing"). ECF Nos. 33, 34. As set forth below, the KTS Defendants' motion is granted, and Bridge Housing's motion is denied.

# I. BACKGROUND

## A. Factual Background

Plaintiff is a tenant at Celadon, a residential property in San Diego owned by Bridge Housing, where he receives federally funded low-income housing assistance from the U.S. Department of Housing and Urban Development's ("HUD's") Choice Voucher Program. Plaintiff's claims arise from his tenancy at Celadon. ECF No. 32 ¶ 17.

The Second Amended Complaint names four defendants: Bridge Housing, the law firm Kimball, Tirey & St. John LLP ("KTS"), and its attorneys, Natalie D. Contreras and Raymund M. Quicho. *Id.* ¶¶ 11-14.

The pro se Second Amended Complaint alleges as follows. Beginning in 2025, Defendants engaged in unlawful conduct by retaliating, discriminating, and harassing Plaintiff because he was engaged in activities that are protected by federal and state law. *Id.* ¶¶ 18-57. On June 3, 2025, Plaintiff published a tenants' union Facebook page and notified Defendants about the page. *Id.* ¶ 20. On June 9, 2025, Plaintiff submitted a request for disability-related accommodations to Bridge Housing due to his "physical, neurodevelopmental, and depressive/anxiety disabilities" that limit "one or more major life activities." *Id.* ¶¶ 16, 21, 67. The following day, Plaintiff received a letter from Contreras, which referenced "Plaintiff's online postings concerning [] management and residents." *Id.* ¶ 64. On June 12, 2025, Plaintiff published a tenants' union website and Defendants were aware of this action. *Id.* ¶¶ 22, 58. Later that same day, Defendants served Plaintiff with a "Notice to Permanently Perform Covenant or Quit," purporting to inform him that he breached his lease agreement and to give him an opportunity to correct the violation. *Id.* ¶¶ 32, 35.

On June 16, 2025, Plaintiff filed a housing discrimination complaint with HUD and the California Department of Fair Employment and Housing, and notified Defendants. *Id.* ¶¶ 23, 66, 71. Later that same day, Defendants served Plaintiff with a second notice to quit that corrected deficiencies that Plaintiff had raised regarding the first notice. *Id.* ¶ 71. Both notices were signed by Quicho. *Id.* ¶¶ 31-36. Defendants never filed an unlawful detainer action against Plaintiff. *Id.* ¶ 30.

**B. Procedural History**

On October 28, 2025, Plaintiff filed his Complaint in this action along with a motion to proceed in forma pauperis ("IFP"). ECF Nos. 1, 2. The Court granted Plaintiff leave to proceed IFP, and directed the U.S. Marshals Service to effectuate service of process. ECF No. 3. On December 3, 2025, Plaintiff filed an Amended Complaint. ECF No. 8. In January

2026, the KTS Defendants, along with defendants Bridge Housing and Jennifer Ramirez (collectively the "Bridge Defendants"), filed motions to dismiss. ECF Nos. 13, 21. Subsequently, on April 9, 2026, the Court granted the KTS Defendants' motion to dismiss and granted in part and denied in part the Bridge Defendants' motion to dismiss. ECF No. 31. The Court dismissed all claims in the Amended Complaint with the exception of Plaintiff's Fair Employment Housing Act ("FEHA") retaliation claim against Bridge Housing. *Id.* at 14-15. The Court granted Plaintiff leave to amend the claims that the Court dismissed. *Id.* at 13-14. Thereafter, on April 13, 2026, Plaintiff filed a Second Amended Complaint. ECF No. 32.

The Second Amended Complaint brings the following claims, as numbered therein, against all Defendants unless otherwise noted: (1) retaliation, pursuant to FEHA (against Bridge Housing only); (2) retaliation, pursuant to the Fair Housing Act ("FHA"), 42 U.S.C. § 3617; (3) interference, coercion, and intimidation, in violation of 24 C.F.R. § 100.400; (4) retaliation, pursuant to Cal. Civ. Code § 1942.5 (against Bridge Housing only). ECF No. 32 ¶¶ 88-134.

On April 27, 2026, the KTS Defendants filed a motion to dismiss. ECF No. 33. On April 30, 2026, Bridge Housing filed its motion to dismiss. ECF No. 34. The motions are fully briefed. ECF Nos. 37 (opp. to KTS Defendants MTD), 38 (reply from KTS Defendants); 36 (opp. to Bridge Housing MTD), 39 (reply from Bridge Housing). On May 26, 2026, Plaintiff filed a motion for leave to file a sur-reply, and the KTS Defendants and Bridge Housing filed their oppositions to that motion. ECF Nos. 42, 43, 44.

## II. LEGAL STANDARD

Defendants move to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R.

Civ. P. 12(b)(6). The plausibility standard demands more than a "formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557). Instead, a complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

When reviewing a motion to dismiss under Rule 12(b)(6), courts assume the truth of all factual allegations and construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996) (citing *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)). But a court "disregard[s] '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]'" *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). Likewise, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998) (citing *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996)). "After eliminating such unsupported legal conclusions, [courts] identify 'well-pleaded factual allegations,' which [are] assume[d] to be true, 'and then [courts] determine whether they plausibly give rise to an entitlement to relief.'" *Telesaurus VPC*, 623 F.3d at 1003. Dismissal under Rule 12(b)(6) is proper where there is no cognizable legal theory to support the claim or when there is an absence of sufficient factual allegations to support a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

## III. ANALYSIS

### A. *Noerr-Pennington* Doctrine

The KTS Defendants argue that Plaintiff's claim two and three are barred by the *Noerr-Pennington* doctrine because it "provides broad immunity to attorneys engaging in conduct incidental to litigation." ECF No. 33-1 at 13. The KTS Defendants contend that Plaintiff's second and third claim are based on conduct incidental to litigation: specifically,

a letter from defendant Contreras alleging violations of the lease agreement, and two notices to quit. *Id.* The KTS Defendants argue that "the only allegations against the Defendants relate to their communications as attorneys with Plaintiff." *Id.*

In response, Plaintiff argues that *Noerr-Pennington* does not "extend to all prelitigation conduct or to actions untethered from a genuine effort to invoke judicial process." ECF No. 37 at 15. Plaintiff further contends that the KTS Defendants have taken inconsistent positions: in invoking the litigation privilege, they characterize the notices to quit as "mechanisms intended to allow cure and avoid litigation," while at the same time invoking *Noerr-Pennington* and characterizing the notices as "activity in furtherance of litigation." *Id.* at 14. Finally, Plaintiff further argues that whether Defendants' conduct constitutes protected activity under the *Noerr-Pennington* doctrine constitutes a question of fact, which is "not suitable for resolution on a motion to dismiss." *Id.* at 15.

"The *Noerr-Pennington* doctrine derives from the First Amendment's guarantee of 'the right of the people . . . to petition the Government for a redress of grievances.'" *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) (quoting U.S. Const. amend. I). "Although the doctrine was developed in the antitrust context, it has since been extended to other statutory schemes." *Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 711 F.3d 1136, 1139 (9th Cir. 2013) (internal citations omitted). Under the *Noerr-Pennington* doctrine, "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa*, 437 F.3d at 929 (citing *Empress LLC v. City & Cnty. of S.F.*, 419 F.3d 1052, 1056 (9th Cir. 2005)). The doctrine extends to claims arising out of a litigant's petitioning activity. *See Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1183–84 (9th Cir. 2005) (the *Noerr-Pennington* doctrine applies to "[a] complaint, an answer, a counterclaim and other assorted documents and pleadings, in which plaintiffs or defendants make representations and present arguments to support their request that the court do or not do something"). In addition, "[c]onduct incidental to a lawsuit, including a pre-suit demand letter, [also] falls within the protection of the *Noerr-*

*Pennington* doctrine." *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008) (citing *Sosa*, 437 F.3d at 936–38).

However, "[n]ot all petitioning activity is immunized[.]" *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 644 (9th Cir. 2009). "[N]either the Petition Clause nor the *Noerr-Pennington* doctrine protects sham petitions[.]" *Sosa*, 437 F.3d at 932. The sham exception to *Noerr-Pennington* does not apply when a litigant "was genuinely seeking governmental action." *Oregon Nat. Res. Council v. Mohla*, 944 F.2d 531, 535 (9th Cir. 1991) (citing *Franchise Realty Interstate Corp. v. San Francisco Local Joint Exec. Bd. of Culinary Workers*, 542 F.2d 1076, 1081 (9th Cir. 1976)). The Ninth Circuit has identified "three circumstances in which the sham exception might apply" in the litigation context:

> [F]irst, where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful; second, where the conduct involves a series of lawsuits brought pursuant to a policy of starting legal proceedings without regard to the merits and for an unlawful purpose; and third, if the allegedly unlawful conduct consists of making intentional misrepresentations to the court, litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy.

*Sosa*, 437 F.3d at 938 (internal quotation marks and citations omitted). Litigation is objectively baseless if "no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993).

The Court first determines whether Plaintiff's second and third claims arise from petitioning activity or conduct incidental to it. Defendants argue that the letter and notices to quit constitute conduct incidental to filing a lawsuit. ECF No. 33-1 at 12-13. The Court agrees. Plaintiff's second and third claims are based entirely on prelitigation communication sent by attorneys representing defendant Bridge Housing. The *Noerr-Pennington* doctrine provides immunity to prelitigation communications and conduct that is "incidental to the prosecution of the suit." *Sosa*, 437 F.3d at 935 (citation omitted) (concluding that *Noerr-Pennington* immunized defendant's prelitigation communication

where no lawsuit was filed). Plaintiff's allegations relate to Defendants' filing notices to quit and correspondence that discussed potential enforcement action. Notices to quit are required before filing an unlawful detainer action. *See* Cal. Civ. Proc. Code § 1161; *Sosa*, 437 F.3d at 935 ("[C]ommunications between private parties are sufficiently within the protection of the Petition Clause to trigger the *Noerr-Pennington* doctrine, so long as they are sufficiently related to petitioning activity."). Moreover, the correspondence sent from defendant Contreras was conduct incidental to petitioning activity because the communications detailed alleged lease violations and discussed future legal action against Plaintiff if the violations were not remedied. *See Sosa*, at 936 ("[P]receding the formal filing of litigation with an invitation to engage in negotiations to settle legal claims is a common, if not universal, feature of modern litigation . . . . Restricting such prelitigation conduct when the same demands asserted in a petition to the court is protected would render the entire litigation process more onerous, imposing a substantial burden on a party's ability to seek redress from the courts."). These allegations concern Defendants' actions incidental to petitioning activity, bringing them within the scope of *Noerr-Pennington*.

Next, the Court considers whether the alleged petitioning activity falls within *Noerr-Pennington*'s sham exception. Litigation related activity that is "objectively baseless" and brought for an unlawful purpose is not protected by *Noerr-Pennington*. *See Prof'l Real Estate Inv'rs, Inc.*, 508 U.S. at 60–61. Litigation is objectively baseless if "no reasonable litigant could realistically expect success on the merits." *Id.* at 60. The party asserting the sham exception must establish that the litigation is objectively baseless before the court considers whether the petitioning activity was brought for an unlawful purpose. *Id.* at 57-61 (holding that "an objectively reasonable effort to litigate cannot be sham regardless of subjective intent").

Here, Plaintiff failed to plead facts alleging that the KTS Defendants' prelitigation conduct was objectively baseless. Plaintiff alleges that Defendants' conduct was undertaken for an improper purpose, namely, unlawful discrimination and retaliation against him for engaging in protected activity. ECF No. 32 ¶¶ 74-84. Plaintiff alleges that

both notices to quit contained numerous deficiencies that rendered them "legally insufficient to support an unlawful detainer action." *Id.* ¶ 76. Plaintiff further alleges that the defective notices "coupled with [the] absence of any subsequent unlawful detainer action" demonstrate that Defendants were using their prelitigation communication as "tools of coercion and intimidation rather than as bona fide steps towards litigation." *Id.* ¶ 107. These allegations do not satisfy the requirement of plausibly alleging that the contemplated unlawful detainer action was objectively baseless. *See Carpenters Local Union 721 v. Limon*, No. CV 17-4426 DSF (MRWx), 2018 U.S. Dist. LEXIS 222460, at *4 (C.D. Cal. Feb. 27, 2018) (concluding that the *Noerr-Pennington* sham exception does not apply where counterclaimant failed to allege facts sufficient to show that the litigation activity is objectively baseless); *OG Int'l, Ltd. v. Ubisoft Ent.*, No. C 11-04980 CRB, 2012 WL 4809174, at *3 (N.D. Cal. Oct. 9, 2012) (concluding that defendants' pre-suit demand letters do not fall into the sham exception where plaintiff did not allege that claims in the letter were objectively baseless). For these reasons, the Court concludes that Plaintiff has failed to make sufficient allegations demonstrating that the sham litigation exception applies. Accordingly, the Court dismisses Plaintiff's second and third claims, and declines to address Defendants' remaining arguments as to these claims.

**B. Litigation Privilege**

Defendant Bridge Housing argues that Plaintiff's claims one, two, and four are barred by the litigation privilege, because the challenged conduct was taken in serious contemplation of litigation. ECF No. 34 at 2-4. Specifically, Bridge Housing argues that their issuance of a second notice to quit addressing the deficiencies of their first notice indicates that litigation was seriously contemplated. *Id.* at 3. Bridge Housing contends that after receiving the notices, Plaintiff cured the lease deficiencies; thus, there was "no need for an unlawful detainer action." *Id.* In response, Plaintiff argues that Defendant's conduct was used as a "retaliatory tool[] directed at Plaintiff's tenancy." ECF No. 36 at 7. Plaintiff further argues that whether litigation was contemplated in good faith presents a factual question that should not be resolved at the pleading stage. *Id.*

California's litigation privilege applies to any communication "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that ha[s] some connection or logical relation to the action." *Graham-Sult v. Clainos*, 756 F.3d 724, 741 (9th Cir. 2014) (quoting *Mansell v. Otto*, 108 Cal. App. 4th 265, 280 (2003)). "The principal purpose of [California's litigation privilege] is to afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Silberg v. Anderson*, 50 Cal. 3d 205, 213 (1990) (internal citation omitted). A prelitigation communication is protected by the litigation privilege only when it "relates to litigation that is contemplated in good faith and under serious consideration." *Action Apartment Assoc., Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1251 (2007) (citations omitted). The litigation privilege is an affirmative defense, and Defendants bear the burden of proof to show that it applies to their conduct. *See Quigley v. Garden Valley Fire Prot. Dist.,* 7 Cal. 5th 798, 810 (2019) (determining that the litigation privilege is an affirmative defense); *Hinerfeld-Ward, Inc. v. Lipian*, 188 Cal. App. 4th 86, 93 (Ct. App. 2010) (finding that a defendant who "advances an affirmative defense to the plaintiff's claims bears the burden of proof on the defense") (citation and quotation marks omitted).

Defendants' arguments for dismissal related to the litigation privilege are similar to the arguments that they raised in their previous motions to dismiss Plaintiff's First Amended Complaint. ECF Nos. 34 at 3-4; 33-1 at 10-11. Defendants again rely on two cases, *Bisno v. Douglas Emmett Realty Fund 1988*, 174 Cal. App. 4th 1534 (Ct. App. 2009) and *Feldman v. 1100 Park Lane Assocs.*, 160 Cal. App. 4th 1467 (Ct. App. 2008) to support the proposition that a notice to quit is protected by the litigation privilege even when an unlawful detainer action is not filed. The Court previously concluded that the holdings in *Bisno* and *Feldman* do not "stand[] for the proposition that a three-day notice is in all circumstances protected by the litigation privilege; the inquiry is whether the notice 'was issued when a concomitant unlawful detainer action was contemplated in good faith.'" ECF No. 31 at 7. Defendants' motions to dismiss do not meaningfully acknowledge the Court's

prior ruling, as they fail to identify additional legal authority that would lead to a different result.

Furthermore, defendant Bridge Housing Corporation argues that the California litigation privilege applies to "each retaliation cause of action[,]" including Plaintiff's FHA retaliation claim. ECF No. 34 at 2-3. The Court disagrees. In *Religious Technology Center v. Wollersheim*, 971 F.2d 364, 365 (9th Cir. 1992), the Ninth Circuit rejected the defendant's argument that plaintiff's federal copyright claim was barred by California's litigation privilege, holding that "in federal question cases, the law of privilege is governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience. [The defendant] cites no cases, and we have found none, indicating such a privilege has been recognized as a matter of federal common law." *Id.* at 367 n.10 (citation and internal quotation marks omitted); *see also Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 790 F. Supp. 2d 1024, 1030 (N.D. Cal. 2011) ("*Religious Technology Center* stands for the uncontroversial rule that California's litigation privilege does not apply to *federal* claims."). The Court concludes that for this reason as well, the California litigation privilege does not bar Plaintiff's FHA claim.

Accordingly, the Court declines to dismiss claims one, two, or four based on the litigation privilege.

**C. Leave to Amend**

"Rule 15(a) declares that leave to amend shall be freely given when justice so requires[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted). At the same time, "a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (citation omitted). "[T]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008) (quotations omitted).

Here, the Court is dismissing Plaintiff's second and third claims for failure to adequately plead facts supporting his argument that Defendants' conduct falls within the sham exception of *Noerr-Pennington*. This deficiency could possibly be cured by the amendment of additional factual allegations that Defendants' conduct was objectively baseless. *See B&G Foods N. Am., Inc. v. Embry*, 638 F. Supp. 3d 1122, 1134 (E.D. Cal. 2022) (granting plaintiff leave to amend its complaint to include additional factual allegations under the sham exception of the *Noerr-Pennington* doctrine); *Wonderful Real Est. Dev. LLC v. Laborers Int' l Union of N. Am*. Loc. 220, No. 119CV00416LJOSKO, 2020 WL 91998, at *11 (E.D. Cal. Jan. 8, 2020) (same). Accordingly, the Court grants Plaintiff leave to file a second amended complaint for the sole purpose of addressing the deficiencies as they relate to claims two and three.

## IV. CONCLUSION

For the foregoing reasons, the KTS Defendants' motion to dismiss [ECF No. 33] is **GRANTED**. The Bridge Defendants' motion to dismiss [ECF No. 34] is **DENIED** and the Court **DISMISSES** claims two and three asserted in the SAC.

The Court **GRANTS** Plaintiff leave to file a third amended complaint, if Plaintiff chooses to do so, within ***thirty (30) days*** of the date of this order and subject to the limitations described above. The amended pleading must be complete in and of itself, without reference to the Second Amended Complaint or any other pleading, attachment, or document. If Plaintiff files a third amended complaint that exceeds the leave granted by this order, the pleading will be stricken.

If Plaintiff does not file an amended pleading within the timeframe set forth above, the Second Amended Complaint will remain the operative pleading as to claims one and four only; all Defendants except Bridge Housing will be dismissed from the action; and Bridge Housing's responsive pleading will be due forty-five (45) days after the date of this order.

///

///

Plaintiff's motion to file a sur-reply [ECF No. 42] is **DENIED**.[1]

**IT IS SO ORDERED.**

Dated: July 30, 2026

Hon. Robert S. Huie
United States District Judge

[1] Plaintiff's motion seeks to submit briefing in response to Defendants' "arguments substantially expanded and further developed in the Reply briefs[,]" addressing "litigation privilege, Noerr-Pennington immunity, attorney participation in retaliatory conduct, causation severance, and the characterization of the challenged conduct as merely routine prelitigation communications." ECF No. 42 at 2. Defendants oppose and contend that their reply briefs do not include any new arguments. ECF Nos. 43, 44. Plaintiff's proposed sur-reply does not purport to address new arguments raised in Defendants' reply briefs, but instead includes additional factual material that was not included in the Second Amended Complaint. This is not a valid basis for a sur-reply. *See Banga v. First USA, NA*, 29 F. Supp. 3d 1270, 1276 (N.D. Cal. 2014) (concluding that leave to file a sur-reply may be warranted when "a party raises a new argument or presents new evidence in a reply brief"). Accordingly, Plaintiff's motion to submit additional briefing is denied.