UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID ALBERTS,<br>Plaintiff,<br>v.<br>BRIDGE HOUSING CORPORATION, et al.,<br>Defendants. | Case No.: 25-cv-2908-RSH-SBC<br>**ORDER GRANTING KTS DEFENDANTS' MOTION TO DISMISS**<br>[ECF No. 47] |

Pending before the Court is a motion to dismiss, or in the alternative, motion to strike Plaintiff's Third Amended Complaint ("TAC"), filed by defendants Kimball, Tirey & St. John LLP, Natalie D. Contreras, and Raymund M. Quicho (collectively the "KTS Defendants"). ECF No. 47.

On July 30, 2026, the Court granted the KTS Defendants' motion to dismiss Plaintiff's second amended complaint ("SAC"). ECF No. 45 at 11.[1] The Court determined that "Plaintiff's second and third claims are based entirely on prelitigation communication sent by attorneys representing defendant Bridge Housing"—namely, a June 10, 2025 letter

[1] All citations to electronic case filing ("ECF") entries refer to the ECF-generated page numbers.

followed by notices to quit on June 12 and June 16, 2025, accusing Plaintiff of lease violations—and that these three communications fall under the protection of the *Noerr-Pennington* doctrine. *Id.* at 5-7. The SAC alleged that the two notices to quit were "facially invalid, legally defective, and unenforceable," for example, because they failed to identify the landlord or specify the dates that Plaintiff allegedly violated his lease. *See* ECF No. 32 at 9-10. The Court determined, however, that Plaintiff's allegations failed to plausibly plead that the contemplated unlawful detainer action was "objectively baseless" as required for the sham exception to *Noerr-Pennington*. ECF No. 45 at 8. The Court granted Plaintiff leave to file a TAC "for the sole purpose of addressing the deficiencies as they relat[ed] to claims two and three." *Id.* at 11.

The issue before the Court is therefore a narrow one: The Court considers whether Plaintiff has now adequately pleaded the sham exception to *Noerr-Pennington* in connection with the second and third claims in the TAC. As set forth below, the Court determines that Plaintiff has not.

## I. BACKGROUND

The pro se TAC alleges as follows. Plaintiff is a tenant at Celadon, a residential property in San Diego owned by Bridge Housing Corporation. ECF No. 46 at 4. Beginning in May 2025 and continuing into June 2025, Plaintiff engaged in various forms of tenant advocacy. *Id.* at 4-5. He also submitted to Celadon management on May 17, 2025 a request for a grievance hearing; and on June 9, 2025, requested certain disability accommodations. *Id.*

On June 10, 2025, Plaintiff received a letter from defendant Contreras, identifying herself as counsel for Celadon, responding to Plaintiff's "recent grievance regarding secondhand and thirdhand smoke in the common areas and apartments[,]" and "direct[ing] Plaintiff to submit written verification" of his previous request for accommodation. *Id.* at 6; ECF No. 46-1 at 9-11. The letter also asserted "alleged lease violations" by Plaintiff, ECF No. 46 at 6:

> **<u>Additional Notice Regarding Conduct</u>.** We also wish to address the

> tone and volume of your recent communications, including your June 10, 2025, email. Please be advised that, due to your recent conduct including repeated use of profanity, harassment, and the public posting of defamatory statements and unauthorized images of management and residents - our clients are preparing to serve you with a NOTICE TO PERMANENTLY PERFORM COVENANT OR QUIT. These actions constitute violations of your Lease.
>
> Your ongoing pattern of hostile, accusatory, and disparaging language toward management is outside the bounds of respectful and constructive dialogue expected under your lease. The excessive volume and adversarial nature of your emails have contributed to delays in the grievance process, as management must devote significant time and resources to reviewing and responding to your frequent and often duplicative complaints. Our clients encourage you to consolidate your concerns into a single, comprehensive communication so that we can more efficiently and effectively address them.
>
> Nevertheless, our clients will not tolerate harassment of employees, other residents, guests, or vendors. Any behavior that is physically, sexually, or verbally abusive, profane, threatening, or disrespectful is a material breach of the Lease and may result in legal action, including termination of tenancy. This includes, but is not limited to, harassing communications, defamatory statements, and unauthorized publication of residents' or management's images. You must also cease and desist emailing corporate management and submit your substantiated complaints in writing to the leasing office in a businesslike manner. You will receive formal notice regarding these violations in accordance with the requirements of the Lease and applicable law.
>
> A copy of this response will be mailed or delivered to you and retained in your tenancy file, as required. Our clients expressly reserve all rights and remedies under the Lease and applicable law, including the right to pursue further legal action as warranted.

ECF No. 46-1 at 10-11.

On June 12, 2025, Plaintiff received a notice to permanently perform covenant or quit signed by defendant Quicho, identifying himself as "Attorney for Agent/Landlord." ECF No. 46 at 7. On June 13, 2025, Plaintiff notified defendant Conteras in writing the reasons why "he believed Notice 1 was deficient[,]" "identifying, among other things, its failure to state the address of the rental property and its failure to provide a sufficiently

detailed description of the alleged lease violations." *Id.* at 7. On June 14, 2025, Plaintiff sent two written communications to defendant Contreras "requesting the legal authority and factual particulars supporting the allegations and directives in the June 10 letter and [n]otice 1, including the names, dates, times, places, and detailed descriptions of the alleged misconduct." *Id.* On June 15, 2025, Plaintiff notified defendant Contreras in writing that he believed the first notice was retaliatory. *Id.*

On June 16, 2025, a second notice to permanently perform covenant or quit was posted on Plaintiff's door containing much of the same language as the first notice and stating that it superseded all other notices. *Id.* at 12. The first and second notices both stated:

> You are being served with this Notice by reason of the fact that you have breached a covenant contained in your Lease or Rental Agreement, in that you have, contrary to said Lease or Rental Agreement, done or omitted to do the following: <u>harassed employees of management.</u>
>
> <u>The grounds for this notice are based on one or more of the following without limitation</u>:
>
> By way of background, you have engaged in a campaign of harassment against Management by sending them a cumbersome amount of emails and complaints, generally accusing them of malfeasance. You have emailed rants to Management almost daily. The majority of these emails discuss topics outside of Management's scope of responsibility. For issues that Management is handling, you have accused them of acting in bad faith.

ECF No. 46-1 at 12, 19 (emphasis in original). The notices contained a list of dated incidents associated with the alleged breach of Plaintiff's lease agreement:

> On or about May 31, 2025 you reported to Management that another resident was bringing in visitors and guests to his unit. You accused Management of giving this resident "deferential treatment" without any basis for this claim. You believe that this resident's guests are "druggies" and "prostitutes" but have no evidence to support this claim.
>
> On or about June 1, 2025, you sent a lengthy email to Management discussing topics that are irrelevant and outside the scope of Management's duties. You accused Management of lying to you with no proof they have done so. You further stated, "Ms. Ramirez hasn't

> lied to me yet, but she will. For now, she's just ignoring me. Treating me like she treats all the other people she thinks are beneath her and not worth her time, trusting that you can handle me, like you handle all the other poor, ignorant sheep who live here, and that sooner or later I'll just go away."
>
> On or about June 3, 2025, at around 8:03pm, you accused Management of hoping that you were, "stupid, ignorant, and gullible." There are no grounds to believe that this is Management's belief. You further accused Management of trying to subvert or delay the hearing process.
>
> On or about June 3, 2025, at around 9:49pm, you further sent an email to Management because you were dissatisfied with their response to a previous email. In this email you again accused Management of delay tactics in handling your grievance. There is no evidence to support Management is acting in bad faith. You further stated Management, "Fucked up," that Management tried to, "fake [their] way through [their] stupidity and incompetence and try to manipulate [you] and tell [you] what to do and try to fuck [you] around?" These statements were wholly unnecessary as Management has been working with you on your grievance.
>
> You also created a Facebook Group where you post images of other residents and members of Management and accuse them of wrongdoing.
>
> On or about June 3, 2025, you posted a picture of a resident accusing him of receiving preferential treatment from Management. You accused him of committing lease violations for years. You also posted pictures of him in the common area hall way with his guests. You accused the resident of picking up alleged druggies and prostitutes, but you have no basis for making these allegations.
>
> On or about June 10, 2025, you sent another cumbersome email to Management. In that email you accused Management of intention[al] stalling and avoidance. You further repeated that a member of Management was acting in bad faith without evidence.

*Id.* at 12-13, 19-20. The notices then stated that the incidents described above are in violation of the House Rules and Regulations and quoted a specific provision:

> "2. Management will not tolerate harassment of employees, other residents, guests or visitors, or management's vendors. Residents and/or their visitors may not engage in any behavior which can be reasonably construed as physically, sexually, or verbally abusive,

> profane, threatening, disrespectful to any member of staff, resident, or visitor of this community . . . Serious and/or repeated violations will constitute a material breach of the Lease Agreement[.]"

*Id.* at 13, 20 (emphasis in original). The second notice requested among other things that Plaintiff refrain from disrespectful interactions with management, ownership, and other residents; from posting pictures of other residents or management without consent; and from making disparaging online posts about other residents or management. *Id.* at 21. The same day he received the second notice, Plaintiff filed a housing discrimination complaint with the U.S. Department of Housing and Urban Development and the California Department of Fair Employment and Housing. ECF No. 46 at 11.

Defendants never filed an unlawful detainer action against Plaintiff, and Plaintiff was not evicted. *Id.* at 8-10, 13. Plaintiff is suing based on Defendants' acts of sending him the June 10, 2025 letter and the two subsequent notices to quit. *Id.* at 15-18.

## II. ANALYSIS

### A. *Noerr-Pennington* Doctrine

Under the *Noerr-Pennington* doctrine, "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) (citing *Empress LLC v. City & Cnty. of S.F.*, 419 F.3d 1052, 1056 (9th Cir. 2005)). The doctrine extends to claims arising out of a litigant's petitioning activity. *See Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1183-84 (9th Cir. 2005). In its prior order, the Court determined that the letter and notices to quit constitute conduct incidental to filing a lawsuit and fall within the protection of the *Noerr-Pennington* doctrine. ECF No. 45 at 6-7.

However, "neither the Petition Clause nor the *Noerr-Pennington* doctrine protects sham petitions[.]" *Sosa*, 437 F.3d at 932. "Litigation is a sham where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful." *United States v. Koziol*, 993 F.3d 1160, 1171-72 (9th Cir. 2021) (quotation omitted). Litigation is objectively baseless if "no reasonable litigant could realistically expect success on the

merits." *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993). The Court considers whether Plaintiff alleges sufficient facts to demonstrate that the sham litigation exception applies to claims two and three.[2]

Plaintiff has failed to cure the pleading deficiencies identified by the Court in its prior order. The TAC, like the SAC, alleges various defects in the legal adequacy of the notices. *See* ECF No. 32 at 9-10; ECF No. 46 at 13-14. The TAC alleges that the first notice "omitted the address of the premises, failed to identify the dates or time period of the alleged violations, required compliance 'within the next three (3) days' without identifying when the period began or expired, and alleged categories of misconduct without identifying the conduct Plaintiff was allegedly required to cure." *Id.* at 13. The second notice likewise "required compliance within three (3) days without identifying when that period began or expired," and "retained vague and overbroad allegations while imposing revised and additional demands beyond those contained in Notice 1." *Id.* Plaintiff further alleges that both notices were overbroad in their demands, were insufficiently specific, and relied substantially on Plaintiff's protected activities. *Id.* at 13-14. Plaintiff also alleges that the second notice was not properly served. *Id.* at 14. As with the SAC, however, the TAC's allegations of formal or procedural defects in connection with the notices does not plausibly allege that the contemplated unlawful detainer action was objectively baseless. As set forth in the TAC and its attachments, and as reproduced above, the letter and notices at issue were reasonably specific about the lease provisions that Plaintiff allegedly violated and about the incidents supporting the alleged violations. If the allegations in the notices were true—and Plaintiff does not plead facts establishing otherwise—those facts may have

---

[2] The Parties dispute whether a heightened standard applies to pleading the sham exception under *Noerr-Pennington*. ECF No. 47-1 at 16-17; ECF No. 48 at 7-11. As one district court has noted, there are "conflicting Circuit precedents" on this question. *See B&G Foods N. Am., Inc. v. Embry*, 638 F. Supp. 3d 1122, 1127 (E.D. Cal. 2022). In this case, the Court determines that the TAC fails under either a Rule 8(a) standard or a heightened standard.

legitimately amounted to a lease violation. Plaintiff objects to the form and/or service of the notices, without establishing their legal invalidity; but even if these particular notices were in fact flawed—flaws that could presumably be cured, for example, by adding the name of the landlord or specifying the dates of the three-day period—these flaws would not render a contemplated unlawful detainer action baseless.[3]

Plaintiff also alleges that the fact that an unlawful detainer action was never filed is also evidence that the contemplated litigation was a sham. ECF No. 46 at 13-15. The KTS Defendants respond that they did not file an unlawful detainer action because Plaintiff in fact took steps to comply with the notices. ECF No. 47-1 at 16. But regardless, "failure to file [a] threatened lawsuit supports the second prong of the sham exception[,]"—namely, whether there was an improper or unlawful purpose. *See Koziol*, 993 F.3d at 1171-72. The TAC fails to satisfy the first prong of the sham exception, that of objectively baseless litigation; the Court need not evaluate the adequacy of the TAC's allegations as to improper motive.

**B. Leave to Amend**

"Rule 15(a) declares that leave to amend shall be freely given when justice so requires[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted). At the same time, "a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (citation omitted). "[T]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint."

---

[3] Indeed, even a lawsuit that is unsuccessful on the merits does not establish an objectively baseless one. *See White v. Lee*, 227 F.3d 1214, 1232 (9th Cir. 2000) ("The fact that a litigant loses his case does not show that his lawsuit was objectively baseless for purposes of Noerr-Pennington immunity[.]").

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008) (quotations omitted).

Here, the Court has already afforded Plaintiff two opportunities to amend claims two and three. On April 9, 2026, the Court granted Plaintiff leave to amend the claims that the Court dismissed, including claims two and three. ECF No. 31 at 13-14. On July 30, 2026, the Court granted Plaintiff leave to amend for the purpose of pleading facts supporting the sham exception in claims two and three. ECF No. 45 at 11. The Court finds further amendment would be futile and **DENIES** leave to amend. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (holding plaintiff's failure to correct deficiencies in its second amended complaint was a "strong indication" that plaintiff had "no additional facts to plead") (internal quotation marks omitted).

## III. CONCLUSION

For the foregoing reasons, the KTS Defendants' motion to dismiss [ECF No. 47] is **GRANTED**.[4] The Court **DISMISSES** claims two and three asserted in the TAC.

**IT IS SO ORDERED.**

Dated: October 9, 2026

Hon. Robert S. Huie
United States District Judge

---

[4] In light of the dismissal of claims two and three, the Court does not reach the KTS Defendants' alternative requested relief of striking these claims.